Mr. Poitier, did I pronounce that right? Yes, you did, Your Honor. Thank you. It's good to have you with us, sir. Thank you. And you represent Mr. Dupree? That is correct, sir. Glad to have you here. And you're part of the Attorney General's Office in Virginia. Is that correct? For Maryland, Your Honor. For Maryland. I'm sorry. I'm in her home state. I apologize. It's okay. Yeah. Yeah, you're the Assistant Attorney General for Maryland. It's good to have you with us. You may proceed. Thank you, Your Honor. Good afternoon. May it please the Court. Your Honor, when the District Court denied Mr. Dupree's summary judgment request as to his affirmative defense of exhaustion, it did so based on one undisputed fact, and that is the existence of a collateral IIU investigation and an erroneous understanding of both Maryland exhaustion regime in effect at the time, and the standards that are to be applied in a court's assessment of availability as set forth by the Supreme Court in Ross v. Blake. The District Court's decision wholly extinguished the defense at the trial court level, as there was no additional evidence that could have been advanced at or after trial that would have caused the court to make this decision early. Can I ask you, is there a reason why you all didn't file a Rule 50 motion here? Well, Your Honor, frankly, it goes to what I just said. You could have done it, right? You could have preserved the issue then, right? Yes, we could have. Which we didn't do that, right? It seems to me to be pretty ironic that the state, who did not exhaust their remedies, is now trying to blow out a jury verdict on the basis that a prisoner did not exhaust their remedies. Does that strike you as odd? I understand the comparison, but I think it's not entirely what we have here. I mean, on summary judgment, the matter was resolved on one fact, and that was it. There was nothing to do at trial. It wasn't as if the judge denied summary judgment. You're arguing that our precedent is wrong. Is that right? Is that correct? No, not particularly. I don't know how to pronounce it. I'm talking about Judge Gregory's opinion that Judge Hamilton agreed with, that Judge Mott's dissented. You're saying that's not the controlling precedent that we have to adhere to? No, I believe that is the controlling precedent. Is that right? You're saying we should agree with Judge Mott? To a point. Our argument is a little bit more nuanced than that. First of all, in Chesapeake, there is one sort of carve-out to the general rule established by Chesapeake, and it's a pretty straightforward one, and that, of course, is when summary judgment is denied, but it is also granted to the other party. It is without question, and that matter is preserved for appeal. And that is something that is noted in the Chesapeake decision in one of its footnotes. I think it's footnote 11. That's effectively what we have here. There was the decision by the judge was on a pure question of law, and there was no other facts that we could advance a trial that would have caused him to reconsider. But wasn't that the case in the, again, I'm going to butcher the name, but in the Varghese case? I mean, I'm sympathetic to your argument. No attorney, unless they, you know, were familiar with our ruling, would have thought to raise this because it's not an issue at trial at all, but that's what Judge Mott said in the dissent. And so she said, Chesapeake doesn't go this far. This is an affirmative defense that's only resolved before trial. And that's exactly what you have. And so unless we, you know, there's only three of us here. We can't, we can't disagree with our precedent. Right. I understand. I, my argument, our argument is that. Well, what do you want us to do if that's our, that's our controlling precedent, what you expect us to do? You want us to take it in bank initially or something? Do you know anything like that? No, Your Honor. Right. Again. Do you want the in-bank court to fix it? Do you want us to rule against you summarily? Then you petition for in-bank rehearing? That's not what I would, that's not the ruling. You have to recognize. I mean, you represent the public prosecutor for Maryland. Right. You have to recognize that we, we are obliged and we try to adhere to the precedent of our court and that of the Supreme court. And that's all we can do. And if this Mangese case controls here, considered along with Chesapeake, but if Mangese controls and Judge Mott said it did in her dissent. That's the reason she wrote dissent when she was outnumbered. I don't know what else we could do other than to dismiss this appeal or to take it in bank, prior to taking it in bank, you haven't requested to go in bank. That's correct. But again, I do think that. What can we do? Tell us what we can, that's what I want to know. What can we do? Well, I think Varghese, this case is distinguishable from Varghese. I think there's no question it had to do with an affirmative defense. But in that particular case, the affirmative defense had to do with a specific claim. Okay. It had, it was affirmative defense of preemption. It had to do with a particular claim. The decision on summary judgment with it was inextricably intertwined with and other decisions on summary judgment relating to the same subject matter, which is the separation of or separation benefits under ERISA or potentially available under ERISA. And so, it may have involved factual disputes, inherent factual disputes, which of course could lead to that bomb on appeal that the Chesapeake decision exists to prevent. Whereas in this particular matter, we don't have that. We have a legal defense. But it's a different, it's different from the one in Varghese. And the procedural posture is entirely different in as much as the matter was resolved, again, as though not just an affirmative defense, but a condition proceeding to suit. So, it's, it's, let me back up for a minute. Exhaustion itself. Again, this is an inquiry that is entirely separate than the merits. Varghese, again, you had on summary judgment claims that implicated the merits and then a trial that related to the merits. Whereas with exhaustion, it doesn't concern the merits. It's a totally separate factual situation. And Judge Gregory explained all that in that opinion. What you had to do, you had to make a post verdict motion, didn't you? My recollection of his opinion is he laid it right out. You have to do that. Right. And, and as we are, Judge Hamilton agreed with me. Judge Hamilton agreed with him. And there was a, I think there was a, a rehearing petition filed and no request for a poll, I guess. It wasn't. Well, well, certainly I, look, I agree with, with your characterization of the language and the tenor and tone of, of Judge Gregory's decision. I would note Judge Mox was on the Chesapeake panel. So Judge Mox was aware of the thoughts and what went into that decision. And she took issue with the notion that there are no special circumstances whatsoever. There, there could not possibly be an exception to this rule. And she laid out an exception. And we're, we're, we're arguing that that exception, we're almost there, but we actually have a different, a more specific carve out to the rule. And that is not only it's a legal, is it a legal defense? But also it's a, it's a, a legal defense decided on a pure question of law. Again, here's the thing, as I read Judge Mox's decision. That wasn't that case. I mean, I know, I know you, you've got to distinguish this case. That's your only route. But I mean, it was a, it was a preemption question. I mean, I really doubt that anything relative to a risk of preemption went to the jury in that case, right? That's a legal question. A judge decides before things move forward. It's, it's hard to see the daylight between that and something like exhaustion. So, Your Honor, and Your Honor's right. I have to distinguish that. We have to distinguish. The, and I've read that decision more times than I can think of. And the truth is it's, it's hard to tell exactly whether there were issues of fact that may or may not have played into the, into the nuances of the decisions. I do know that the decision on preemption on the affirmative defense was the result of another decision on summary judgment, where the plaintiff advanced a number of claims. One was under ERISA. It looks like the defendants argued ERISA doesn't apply, but maybe alternatively, if it does apply, then it's, then the state claims in the case were preempted. So there was this interrelationship between the defenses that were being asserted, the claims and all that. And it's just really hard to tell how much factual nuances relative to the ultimate merits were sort of involved with that particular assessment. Whereas here, it's very clear that exhaustion is totally different. It's, it's a separate, it's a separate evidentiary and legal assessment. And it's not the case where Judge Bennet below found that there was, it denied summary judgment because there were questions of fact or mixed questions of fact or law and things like that, which would have made it incumbent upon us in, in the trial to advance evidence on exhaustion and then, then move, then move for a post-trial motion if found, you know, it was found adverse to us. But that's not really what, again, that's not what happened. We just had one fact. And so the question was, do we present this to the court and not present this court? Do we provide a mini trial on all aspects of exhaustion? Or what do we do? And it's certainly true. We did, we did not make the motion that we frankly should have. Was this case tried by the Attorney General's office? Yes, it was. All right. And you don't challenge, if we were to get to the merits, you don't challenge anything about the trial. You don't claim that there is a trial error. That's correct. That you don't even claim that the verdict was excessive. You plant your feet, you plant your feet on the exhaustion issue, period. Yes, Your Honor. We filed for remitted or after trial, but, but we are, that is not an issue on appeal. The only issue here is exhaustion.  No, the only issue here is whether, is whether, you know, whether the it should be dismissed. It has to be dismissed because of Judge Gregory's opinion in Benghisi or whatever it's called. That's the only issue here. Well, again, Your Honor, I, there's a practical aspect to this. Merits aren't challenged at all. And then if we get to the, if we get to the merits or we get to the area issue on the exhaustion, but then we're faced with the fact that every judge has looked at it and said it's too vague and opaque to constitute exhaustion. That was ruled consistently with Judge Bennett on that attitude. He said, he called it opaque, right? Which is the language the Supreme Court used. Yes, he found it opaque and thus unavailable. That's correct. But, you know, it's, he's not the only, I mean, a number of district court judges have found that, but it's, it's our argument that they've, they just applied the wrong standard in reaching that result. Has any district court judge in Maryland agreed with your position? Yes. Who's that? Judge Williams in the Ross case. Judge, Judge Alexander Williams agreed with you? Yes, that's correct, Your Honor. If, if. All right. And how many disagreed with you? Quite a few. Well, it could be say that every other one, is that a dozen or more? I would, I want to put it at a dozen, but I think what's important is the number of cases since Ross, since 2016. In those cases, again, I, they disregard the express direction from the Supreme Court on how to assess opacity. They don't look at the, at the, the administrative regime as the Supreme Court said it needs to look at. And that is, it's got to be viewed through the lens of the ordinary prisoner. One case, the Brightwell case, the prisoner actually got in front of the inmate grievance office. And then. Ordinary prisoner is not a lawyer. He's not a legal expert. That's correct. He, this fellow filed something, some kind of a claim, and it was denied or dismissed, right? You mean the plaintiff in this case? The plaintiff in this case filed something and it was dismissed. That's correct. The plaintiff ultimately got to the inmate grievance office and it was dismissed in preliminary review. That was one of the things that Judge Bennett relied on here. Well, he, I mean, he relied on, he, he pretty much, as I read his opinion, he pretty much said that, look, it doesn't matter what the inmates do. It, the, this district has held that an IAU investigation forecloses administrative review, which is just wrong. It's simply wrong. It reads, it reads, it reads the inmate grievance office essentially out of, out of existence. Something created by the general assembly to handle inmate grievances. It's saying by, by simple fiat, by an administrative agency, it can somehow divest jurisdiction over inmate grievances. And that's, that's just wrong. So, but again, time and time again, the inmates in these cases, they get to the, to the administrative tribunal. Mr. Mr. Lee, you know, we attached a, some records relating to one of, What Lee, this fellow Lee is another one of the prisoners that was beaten up. Yes, he was. That's right. And he, and he went a different route and he got $5,000. Right. And he, but the point is he had no problem negotiating. Pierre and the plaintiff Pierre went to a jury and they awarded him $700,000. That's correct. But he still had to exhaust his administrative remedies. I mean, it's like on the, like on the face of it, the $5,000 award was kind of a de minimis. Depending on what happened. I mean, comparing $700,000 to $5,000, I can't disagree with you. But the, That's just the facts. You're the one that brought up this Lee case. No, I understand that. But, but again, the mandate for exhaustion was set up by Congress, set up by the Maryland legislature, and they have to do it. And it doesn't matter if they're only going to get $5,000 on a claim. They still have to go through the process. That's why we're all talking about the merits of that issue that you can't get to unless we, unless some way or another, you get to apply what Judge Mott said in the dissent. Didn't that? Some of what, yes. But again, what Judge Mott said in the dissent further qualified. I'm sorry. That's right. Let's judge Mott's remarks control. If they don't, the case has to be dismissed. Do you agree with that? We can't review it under any standard, Judge Gregory says. Under any standard, we can't review your issue. Which means, as I see it, that we have to dismiss. Your Honor, there have been, when this has come up in the very few times, and the court has recognized that there's, there may be a reason to depart from this rule. I would simply ask the court to consider departing from it slightly. And that is in relation to the circumstance that Judge Mott advocates in the context of a legal defense that is totally resolved before you get to trial, totally resolved. And how could we set through to our obligation to adhere to the precedent of our court? Well. You can answer my question. Thank you, Your Honor. How can we do what you want and be true to the precedent, the controlling precedent of the Fourth Circuit? Well, I think the controlling precedent indicates that if a summary judgment is denied, but also granted on the same exact issue, then the court can consider it on appeal. That's effectively what happened here. And then even if that didn't apply or doesn't apply, then it's a little bit of a carve out of Chesapeake using Judge Mott's analysis, but also in the context of a pure question of law on a matter that was resolved well before trial. And that's how I would submit it would go. And. Thank you very much. Thank you. Pothier. Mr. Honig, he's out there. Yes. Good afternoon, Judge King. Good to have you with us. Thank you. It's good to be here. And may it please the court. What's clear from the briefs and from Mr. Pothier's argument today is that Mr. Dupree asks this court to abandon its well-settled binding precedent regarding the preservation of a pre-trial denial of a motion for Mr. Dupree to move for judgment as a matter of law post verdict. Mr. Dupree hopes to relitigate the issue of exhaustion, his affirmative defense, which was his burden at trial here in this court with brand new arguments. As Judge Novak remarked in the argument just before us, the burden of a party to prove an affirmative defense is not on appeal, but it's at trial. And here we just heard argument that said Judge Bennett's denial of the summary judgment before trial was in effect a purely legal decision and it was also in effect a grant of summary judgment for Mr. Younger, but that couldn't be farther from the truth. Given what Mr. Dupree has argued in his briefing as far as the availability of administrative remedies, Judge Bennett's opinion was certainly open to reconsideration. For example, Judge Bennett said on page 14, and this is at the joint extract page 564. This is in his memorandum of opinion denying the summary judgment motion. Judge Bennett cited about 15 lines worth of facts that were in dispute at the time. And then in the very next sentence, Judge Bennett said, and I quote, the court need not resolve disputes concerning Younger's adherence to the AARP process because IIU investigation satisfied his obligation to subject his plans to exhaustion. Well, at trial or at some point after the denial of summary judgment, Mr. Dupree could have put all sorts of evidence in or before the court for Judge Bennett to reconsider. For example, they could have put in instructions that are provided to Mr. Younger and other prisoners like him, advising them of this interplay between the internal investigative unit and the administrative remedy process. They could have put in evidence that Mr. Incident had previous contact with the grievance process or previous contact specifically with the grievance process and the IIU administrative remedy interplay, giving him some specific set of knowledge as to how to navigate through this. And there are all sorts of other categories of evidence that could have been put on. And then Mr. Dupree could have been moved for a motion for judgment at the close of that evidence being submitted. He never did that. And of course the law, it's not only the Barhees case and the Chesapeake case, but just a few months ago in the people for the ethical treatment of animals versus tri-state zoological park case. This was a 2021 decision that this court issued. It again found no reason to depart from the well-settled rule that failure to move for motion for judgment after a trial on the merits waives any challenge to a pretrial denial for summary judgment. I would just like to highlight for the court a couple of points. Judge King, you keyed right in on this that there is no merits challenge whatsoever. Mr. Dupree does not challenge the fact that he ordered correctional officers to go and attack at least six individual prisoners on September 30th, 2013. Mr. Dupree doesn't dispute the fact that a jury awarded a fair and reasonable number of $700,000 to Mr. Younger for that experience. Mr. Dupree doesn't dispute the fact that at the time that all of this happened, Mr. Younger was a pretrial detainee with no convictions. Mr. Dupree does not dispute the fact that Mr. Younger was wrongfully charged, prosecuted, and disciplined after this incident. Mr. Dupree does not dispute the fact or take issue with the jury's finding that Mr. officer and truly no good deed goes unpunished because it was that act. Mr. Younger trying to step in and intervene when a correctional officer was being attacked that brought all of this upon him. I also want to point out for the court that this is not a referendum on Maryland's grievance system writ large. This is not by any means even, it's not even the close consideration of Maryland's grievance system that the Supreme Court decided for a closer look. And the reason why is because the regulations that issue here represent a small sliver of time. The regulations here concern what was going on in 2013 in Maryland prisons. It just so happens that the Blake case and Mr. Younger's experience happened within just a few months of each other. The only difference in those two cases being that in between the Blake case and Mr. Younger's case, there was no administrative remedy available by statute. Now, when Blake went up to the Supreme Court, it was only a matter of practice. It had not yet been codified, but the state of Maryland after Blake was decided, reacted to Blake and the legislature enacted   And the state of Maryland, after Blake was decided, reacted And that amendment embodied and incorporated in the defects that the Blake court identified, specifically the 2018 amendment now requires prison officials to advise prisoners when there is a contemporaneous IIU investigation. Number one, that there is an investigation going on. Number two, that the prisoners will be advised when that investigation is completed. And number three, that the prisoners will have a right of either appeal or a right to refile upon the completion of the internal affairs investigation. Those amendments in 2018 make this case a single fact-specific circumstance. There will be no sweeping consequences for Maryland prisoners or for the state of Maryland in governing its prisons and affirming. There's really no precedential effect. There's only an effect on Mr. Younger. It is this court's duty, of course, that on a review of a pretrial summary judgment, this court sits as the summary judgment court. And the sole question on a summary judgment inquiry is whether there are material facts in dispute. And not what the resolution of those facts are. It's up to the jury, of course, to resolve and then it's for the court to determine whether remedies were available. The facts that were in dispute here, and the most important fact that I would like to point the court to, it's at joint appendix page 76. This is evidence available to Judge Bennett from the time the initial motions to dismiss were filed, but it's possibly one of the most important documents in the record that speaks to the facts still in dispute. Mr. Younger has asserted since the outset of this case that in the days after his attack, in the days after he was beaten, multiple correctional officers came to him and told him, you don't need to do anything to preserve your claim. You don't need to file anything. You don't need to tell anybody about it because internal affairs is involved. It's plainly in the record. It was plainly before Judge Bennett. It was argued many times. No jury was ever asked to weigh in on that. And because we're at summary judgment, we get the benefit. Mr. Younger gets the benefit of that fact. Similarly, there are no instructions, not a single instruction in the record before this court showing prisoners how to participate in the remedy process. Not even the basic instructions that were available in the Blake case several years ago, like the inmate handbook. That's not before this court, and it's not before this court because Mr. Dupree never bothered to put it into evidence or show it to Judge Bennett or argue to Judge Bennett that his legal ruling was incorrect because there were facts that showed that remedies were in fact available. There's another major fact of dispute, and this is again reflected in Judge Bennett's decision. It's a joint appendix, page 564, which is that when Mr. Younger was moved out of the facility where the attack occurred, he was moved within just a few weeks. Correctional officers took all of his property, which included his original grievances and the receipts from those grievances, and without those, he could never prove to the Inmate Grievance Office his compliance or lack thereof with the administrative process. And so the list of facts goes on, and I'm happy to take any questions that the panel may have, but even if this court was to ignore its 35-year-old well-settled precedent and consider this appeal, the bottom line is that there are material facts that remain in dispute. And so from a summary judgment standpoint, Judge Bennett's denial was well-grounded, and it should be affirmed by this court. Thank you. Thank you, Mr. Honig. Mr. Pozner? First of all, just a few points. As to all the facts, again, the court just relied on one fact. There are factual disputes relative to the availability analysis, the three prongs. Those should be resolved if this matter is reversed and remanded. The court should be directed to go through the availability analysis in a manner that's consistent with the Supreme Court's directions, both as it relates to opacity, but the court, of course, can account for whether or not there was active thwarting going on. But Judge Bennett clearly, he decided not to even deal with any of those facts because of the one undisputed fact, and that's the existence of the IU investigation and what he perceived to be its impact on the ability to exhaust. And so as far as precedential effect, the only thing I would point out is the district courts, in this district at least, they are not adhering to Ross v. Blake. They are not adhering to the ordinary prisoner standard when it comes to reviewing opacity. And so that's an important matter that needs to be addressed. Other than that, I really have nothing further at this time unless the court has further questions. I'll submit. Thank you, Mr. Poirier. Judge Rushing, Judge Novak, do you all have any questions for Judge Poirier? None for me either. Thank you. Thank you, counsel. Thank you very much. We will take this appeal under advisement.
judges: Robert B. King, Allison J. Rushing, David J. Novak